[801 NYS2d 296]

In the Matter of BERTRAM BROWN, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, September 27, 2005

### APPEARANCES OF COUNSEL

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Kevin P. Culley* of counsel), for petitioner.

*Jenner & Block, LLP* (*Richard F. Levy* of counsel), for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent Bertram Brown was admitted to the practice of law in the State of New York by the Second Judicial Department on December 15, 1954. At all times relevant to this proceeding, he has maintained an office for the practice of law within the First Judicial Department.

On July 21, 2004, a complaint was referred to the Departmental Disciplinary Committee by the Queens County Surrogate that respondent misappropriated client funds amounting to $74,000 by commingling them with his private funds and disbursing them as his own. On October 4, 2004, respondent appeared at an accounting hearing before the Surrogate, followed by a deposition on November 1. On November 23, respondent submitted his answer to the disciplinary complaint, asserting that he had never misappropriated any funds.

In December 2002, respondent was retained by Teresa Williams to represent the estate of Thomas Scarborough, of which she was the administratrix. The estate consisted of four pieces of real property, all in arrears, and three of which were going through foreclosure proceedings. Ms. Williams wanted the fourth property, located at 447 Beach 46th Street, Far Rockaway, New York, sold. The Surrogate ordered the property sold and provided that the proceeds of the sale were to be placed in a guardianship account for the infant Thomas Scarborough, Jr. In April 2003, the Rockaway property was sold for $74,000 and a check for that amount was issued to respondent as the estate's attorney.

Following the sale, however, respondent's bank records indicate that he deposited the $74,000 into his own personal account, rather than the guardianship account.

At his deposition, respondent testified that when he received the money from the sale of the Rockaway property he did not place it into the guardianship account because there was a "crisis" that required the immediate disbursement of estate funds. Real property in Apopka, Florida belonging to the estate was in imminent danger of foreclosure. To save this property, respondent sent the mortgagee the required funds directly from the Rockaway sale money.

Respondent cites the urgency in attending to the Apopka property as the reason for depositing the $74,000 directly into his personal account, rather than the guardianship account. The Apopka situation was then followed by another alleged immediate crisis, when the Department of Housing Preservation and Development imposed a $27,000 penalty against another

estate property in Kings County. Respondent negotiated this fine down and paid it, again from the Rockaway money. Following these two emergencies the money belonging to Thomas Scarborough, Jr. remained in respondent's personal bank account. The account was drawn on more than 500 times during the period of April 10 to September 2, 2003, at which point the balance of the account dwindled to show a deficit of $1,867.03

Respondent testified before the Committee that his client, Ms. Williams, was made aware of all disbursement of estate money and was in fact with him "virtually" every time he wrote out a check for estate matters. He also admitted, however, that Ms. Williams was never aware that the estate money had been deposited into his private account, nor was she aware of the account balance or the personal reasons for which respondent withdrew funds. Respondent asserts that at all times he had the ability to draw upon other funds to pay estate matters if the account into which he deposited the $74,000 ran low. He also claimed that he was not acting improperly and did not contemplate that he was using other people's money because "[he] always knew that there was money for the Estate if [he] needed money for the Estate."

On January 14, 2005, after several days of hearings before the Surrogate over respondent's handling of the funds, a stipulation of settlement was agreed upon. It was settled that $35,665.72* of the $74,000 had been disbursed for legitimate estate-related reasons and that respondent was entitled to $20,000 in legal fees. The remainder of $19,419.64 was returned to the estate. The stipulation explicitly resolved "any and all claims that the Estate may have against Bertram Brown, and Bertram Brown may have against the Estate."

Respondent claims that the stipulation absolved him from all charges of misappropriation or misconduct. This contention is without merit because the stipulation was not entered into in the context of disciplinary proceedings and the Disciplinary Committee was not a party to the stipulation. Furthermore, respondent was ordered to return $19,419.64 from his personal bank account to the estate. In addition to respondent's own admission of commingling personal and client funds, respondent's bank statement clearly show he deposited Thomas Scar-

---

* Notwithstanding the stipulation, the Committee maintains that respondent's bank records indicate only $31,765.66 was disbursed for legitimate estate expenses.

borough's money into his personal account and disbursed all of the funds within five months.

Even if this Court were to assume that respondent initially deposited and disbursed estate money through his own private account for the altruistic goal of saving the estate's Apopka property, instances of professional misconduct are still plentiful. An immediate need to prevent an August 17 foreclosure does not explain why the estate's money was left in respondent's private account for five months thereafter to be used as his own. Respondent acknowledged this in his deposition when he stated that he "knew that there would be a day when [he] would be accounting for the monies of the estate . . . I knew that." The only proper course of action would have been to withdraw all remaining estate money immediately after the "crisis" had been averted and deposit it in the guardianship account as directed by the Surrogate.

The handling of Thomas Scarborough's funds is not the only complaint of professional misconduct alleged against respondent. On May 5, 2004, a complaint was made by Lucia Santiago. Respondent had represented the Santiago family in the sale of real property in Richmond Hill, New York, that netted proceeds of $61,498.35. Subsequently, when Ms. Santiago's family requested that respondent release $29,498.35 of their money to purchase real property in Lynbrook, New York, respondent refused. Respondent claimed he held onto the money because of a dispute over fees which is entirely irrelevant to the issue of his commingling personal and client funds. The facts are that a deposit of $61,498.35 was made into respondent's personal bank account following the Richmond Hill sale and in the subsequent months respondent allowed his balance to fall below the amount of Santiago money he should have possessed.

A similar complaint was made by Janice Ryan on December 8, 2004. Ms. Ryan hired respondent to represent her in a foreclosure proceeding and to get her mortgage with Chase Manhattan Bank reinstated. The mortgage was $85,000 in arrears at that time. In order to facilitate the reinstatement, Ryan entrusted respondent with $73,069. After the bank rejected the application for reinstatement of the mortgage, respondent advised Ryan to file for chapter 13 bankruptcy protection. Respondent also suggested he retain the money to hide it for the duration of the bankruptcy proceedings. Once Ryan demanded the return of the funds, however, respondent repaid only $7,500, and only after repeated demands. The checks totaling the $7,500 were drawn from respondent's private account.

Although no depositions have been taken, nor fact-finding procedures completed with regard to the Santiago and Ryan complaints, certain actions by respondent are clear. It is undisputed that respondent deposited client money into his private account in all three instances of alleged misconduct. He continually used those funds for personal reasons without informing his clients, and repeatedly allowed his account to fall below the level of client money deposited at the time.

Rules of this Court (22 NYCRR) § 603.4 (e) (1) provides, in pertinent part, that "[a]n attorney who is the subject of an investigation, or of charges by the Departmental Disciplinary Committee of professional misconduct . . . may be suspended from the practice of law, pending consideration of the charges against the attorney, upon a finding that the attorney is guilty of professional misconduct immediately threatening the public interest," including "(ii) a substantial admission under oath that the attorney has committed an act or acts of professional misconduct; or (iii) other uncontested evidence of professional misconduct."

Respondent has admitted under oath to commingling and misappropriating client funds. It is equally indisputable that respondent has deposited monies from three different clients into his own checking account, as evidenced by his personal bank statements. Therefore, the Disciplinary Committee's motion seeking an order pursuant to 22 NYCRR 603.4 (e) (1) (ii) and (iii) immediately suspending respondent from the practice of law is clearly supported by its evidentiary showing. Respondent's conduct clearly evinces a willingness to convert client funds for his own purposes and constitutes misconduct that sufficiently threatens the public interest to warrant interim disciplinary action.

Accordingly, the Disciplinary Committee's motion is granted, and respondent suspended from the practice of law effective immediately, until such time as disciplinary matters before the Committee have been concluded and until further order of this Court.

SAXE, J.P., SULLIVAN, ELLERIN, SWEENY and CATTERSON, JJ., concur.

Respondent suspended from the practice of law in the State of New York, effective the date hereof, until such time as disciplinary matters pending before the Committee have been concluded and until further order of this Court.